UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROCA LABS, INC.,

      Plaintiff,

v.                        Case No. 8:12-cv-2231-T-33EAJ

BOOGIE MEDIA, LLC,

      Defendant.
_____/

## ORDER

This cause comes before the Court pursuant to Defendant Boogie Media, LLC's Motion to Dismiss Complaint (Doc. # 11), filed on November 15, 2012. Plaintiff Roca Labs, Inc. filed a response in opposition to the motion (Doc. # 15) on December 7, 2012, and Boogie Media filed a reply (Doc. # 20) on December 29, 2012. For the reasons that follow, the motion is denied.

## I.   Background

Roca Labs, a Florida corporation, "is in the business of developing, producing and selling food supplements mainly for the weight-loss market to customers worldwide," primarily through the internet. (Doc. # 5 at 1, 5). Roca Labs purports to own certain federally registered marks, including "Natural Gastric Bypass," "Gastric Bypass No

Surgery," "Roca Labs," and "Gastric Bypass Effect."   (<u>Id.</u> at 5).

Roca Labs alleges that Boogie Media, a limited liability company principally operating out of Encino, California, "recently registered the domain names and activated the websites 'allnaturalgastricbypass.com' and 'betterthangastricbypass.com,'" for the purpose of linking those websites to a competing weight loss product called Bystrictin.  (<u>Id.</u> at 7).  Roca Labs alleges that these two websites contain material that infringes its registered marks, and that Boogie Media has also infringed these marks by "publish[ing] sale listings and promotional materials" on other websites such as "Facebook, You Tube, and Vimeo." (<u>Id.</u> at 7-8).

In July of 2012, Roca Labs sent a cease and desist letter notifying Boogie Media that Roca Labs owns the Natural Gastric Bypass trademark and that Boogie Media's use of "Roca Labs' famous name and trademarks to divert traffic to [its] website" constituted a violation of "civil laws regarding trademark infringement and unfair competition."  (Doc. # 5-2 at 2).  However, despite Roca Labs' request that Boogie Media "take down or transfer" the

infringing sites, Boogie Media allegedly continued to infringe Roca Labs' trademarks. (Doc. # 5 at 8).

On October 2, 2012, Roca Labs initiated this action with a Complaint alleging four counts: (1) Trademark Infringement, (2) Cybersquatting, (3) violation of the Florida Deceptive and Unfair Trade Practices Act, and (4) Unfair Competition under Florida Common Law. (Doc. # 1). On October 12, 2012, Roca Labs filed an Amended Complaint alleging the same four causes of action. (Doc. # 5). On November 15, 2012, Boogie Media filed a Motion to Dismiss premised on both Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 11). The Court has carefully reviewed the Motion to Dismiss, Roca Labs' response (Doc. # 15), Boogie Media's reply (Doc. # 19), and is otherwise fully advised in the premises.

## II. __Personal Jurisdiction__

"This Court must address [Boogie Media's] claim that this Court lacks personal jurisdiction because '[a] court without personal jurisdiction is powerless to take further action.'" Carmel & Co. v. Silverfish, LLC, No. 1:12-cv-21328-KMM, 2013 WL 1177857, at *1 (S.D. Fla. Mar. 21, 2013) (quoting Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)).

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008). "A plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." R&R Games, Inc. v. Fundex Games, Ltd., No. 8:12-cv-1957-T-27TBM, 2013 WL 784397, at *1 (M.D. Fla. Mar. 1, 2013) (citing United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Once the defendant challenges personal jurisdiction by submitting evidence in support of its position, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction." Id. (citing Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).

The determination of whether a court has personal jurisdiction over a defendant is governed by a two-part analysis. First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute. See Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249

(11th Cir. 2000).  Second, once it has determined that the long-arm statute is satisfied, the court must determine whether plaintiff's assertion of jurisdiction comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice. See id.; Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996).

### A.   Florida's Long-Arm Statute

"The Florida long-arm statute provides two bases for the exercise of personal jurisdiction: specific and general jurisdiction." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808 (11th Cir. 2010).  In this case, Roca Labs asserts that Boogie Media is "subject to this Court's specific and general personal jurisdiction pursuant to due process and the Florida Long Arm Statute." (Doc. # 5 at 2).  Florida's long-arm statute states, in relevant part:

> (1) Any person . . . who . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> . . .
>
> (b) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(b).

A court may exercise specific personal jurisdiction over a defendant who commits one of the series of acts provided in section 48.193(1).  Where a defendant is found to have undertaken one of the acts enumerated in section 48.193(1), and the cause of action arises from or relates to that act, the long-arm statute has been satisfied.  See Carmel, 2013 WL 1177857, at *2; Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1320 (M.D. Fla. 2010). This Court limits its analysis to the long-arm statute's tortious act provision because that provision is both "applicable and sufficient" in the instant case.  Fla. Stat. § 48.193(1)(b); Cable/Home Commc'n v. Network Prod's, 902 F.2d 829, 856 (11th Cir. 1990).

### 1.   Section 48.193(1)(b): Tortious Act

"In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." PVC Windoors, 598 F.3d at 808 (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002) (citing 8100 R.R. Ave. Realty Trust v. R.W. Tansill Const. Co., 638 So. 2d 149, 151 (Fla. 4th DCA 1994) ("[T]he sole basis for jurisdiction is that the

trust committed a tort in Florida.  Since the only support
in the record for that argument is the complaint, we must
of necessity determine whether it states a cause of action
in tort, in order to determine jurisdiction.")).  As
discussed more fully below, the Court determines that each
Count successfully states a claim for relief, and that each
cause of action arises from Boogie Media's allegedly
tortious act causing injury in Florida.

Trademark infringement has been recognized as a
tortious act within the context of 48.193(1)(b).  See
Licciardello, 544 F.3d at 1283 ("We have held that §
48.193(b) . . . permits jurisdiction over the nonresident
defendant who commits a tort outside of the state that
causes injury inside the state. . . . Therefore . . . the
Florida long-arm statute is satisfied if the alleged
trademark infringement on the website caused injury in
Florida.").  Thus, the remaining question is whether, for
purposes of section 48.193(1)(b), Boogie Media's alleged
infringement occurred "within this state."

### 2. **Section 48.193(1)(b): Within this State**

The Florida Supreme Court has found that a defendant's
physical presence is not required to commit a tortious act
within the state; indeed, a nonresident defendant may

commit a tortious act within the state by electronic, written, or telephonic communication into Florida so long as the cause of action arises from such communication. Whitney Info. Network, Inc. v. Xcentric Ventures, 347 F. Supp. 2d 1242, 1244 (M.D. Fla. 2004) (citing Wendt, 822 So. 2d at 1260).

Tortious acts committed through website postings, however, present a unique challenge: Unlike a phone call, chatroom conversation, or fax, images or words posted to a website are not electronic communications in the traditional sense. Internet Solutions Corp. v. Marshall, 39 So. 3d 1201, 1210-11, (Fla. 2010). First, they are not generally directed at any particular person or even a particular state. Id. Second, even when directed at a particular person or state, the website is still accessible from virtually any forum. Id.

A variety of tests have been developed to determine whether website activity may constitute an electronic communication into Florida. See Trans-Siberian Orchestra, 728 F. Supp. 2d at 1321. For example, in 2008 the Eleventh Circuit employed the "accessibility test," to determine whether a website constituted an electronic communication into Florida. See Licciardello, 544 F.3d at 1282-84.

Under that test, a website's posting which allegedly infringed a plaintiff's trademark was found to have "clearly . . . occurred in Florida by virtue of the website's accessibility in Florida." _Id._ at 1283. However, in _Licciardello_, the Eleventh Circuit declined to resolve the question of "whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held," because the court was able to resolve the question of whether the alleged infringement occurred in Florida on the alternate basis of accessibility. _Id._

Subsequently, in a 2010 defamation action, the Florida Supreme Court and the Eleventh Circuit narrowed the requirements for finding that certain website activity constitutes electronic communication into Florida for purposes of satisfying section 48.193(1)(b). _See Internet Solutions Corp. v. Marshall_, 611 F.3d 1368, 1370 (11th Cir. 2010). In _Internet Solutions_, the court explained that, "[b]ecause Florida law was unsettled as to whether [the defendant's] actions in posting an allegedly defamatory comment on her website constituted an electronic communication[ ] 'into Florida,'" the Eleventh Circuit

certified the following question to the Florida Supreme Court:

> Does posting allegedly defamatory stories and comments about a company with its principal place of business in Florida on a non-commercial website owned and operated by a nonresident with no other connections to Florida constitute commission of a tortious act within Florida for purposes of Fla. Stat. § 48.193(1)(b)[?]

Id. The Florida Supreme Court rephrased that question as follows:

> Does a nonresident commit a tortious act within Florida for purposes of section 48.193(1)(b) when he or she makes allegedly defamatory statements about a company with its princip[al] place of business in Florida by posting those statements on a website, where the website posts are accessible and accessed in Florida?

Id. The Florida Supreme Court answered this question in the affirmative. Id. "It concluded that, although the posting of defamatory material about a Florida resident on a website alone did not constitute the commission of a tortious act under § 48.193(1)(b), the posting of such that was both *accessible* in Florida and *accessed* in Florida constituted the commission of a tortious act of defamation within Florida under § 48.193(1)(b)." Id. (emphasis in original).

Although Internet Solutions analyzed the long-arm statute in the context of a defamation case, its holding

has been extended to trademark infringement actions as well. See Jackson-Bear Grp., Inc. v. Amirjazil, No. 2:10-cv-332-FtM-29SPC, 2011 WL 1232985, at *5-6 (M.D. Fla. Mar. 30, 2011) (evaluating evidence as to whether any Florida resident accessed the relevant website in determining whether the alleged trademark infringement occurred in Florida under section 48.193(1)(b)); Mercury Enters., Inc. v. Vesta Mgmt. Grp., LLC, No. 8:12-cv-417-T-30MAP, 2012 WL 2087439, at *2 (M.D. Fla. June 8, 2012) ("The First Amended Complaint satisfies § 48.193(1)(b) because it alleges . . . a Florida resident accessed [defendant's] website in Florida.").

However, other courts in this district have continued to apply a broader interpretation of section 48.193(1)(b), determining that a court may exercise personal jurisdiction over a nonresident defendant if a tort committed outside Florida causes injury in Florida. For instance, in the recent case of R&R Games, Inc. v. Fundex Games, Ltd., 2013 WL 784397, the court explained:

> Section 48.193(1)(b) permits jurisdiction over a defendant who 'committ[ed] a tortious act within this state.' Florida's intermediate appellate courts are divided on the reach of subsection (1)(b), and the Florida Supreme Court has refrained from deciding the broader question of 'whether injury alone satisfies the requirement

11

of section 48.193(1)(b).' <u>Internet Solutions Corp. v. Marshall</u>, 39 So. 3d 1201, 1206 n.6 (Fla. 2010).   The Eleventh Circuit, noting the division, applies a broad construction of subsection (1)(b), under which courts may exercise personal jurisdiction over a nonresident defendant if a tort committed outside Florida causes injury in Florida. <u>See Licciardello v. Lovelady</u>, 544 F.3d 1280, 1283 (11th Cir. 2008); [<u>Posner v. Essex Ins. Co., Ltd.</u>, 178 F.3d 1209, 1217 (11th Cir. 1999)].   Utilizing this broad construction, courts within the Eleventh Circuit have consistently held that allegations of intentional tortious conduct, including trademark infringement, occurring outside Florida are sufficient for long-arm jurisdiction if the plaintiff suffered harm in Florida.

<u>Id.</u> at *2.

This broad construction of section 48.193(1)(b) applied in <u>R&R Games</u> conforms with the statute's application in other recent decisions as well. <u>See Yellow Pages Photos, Inc. v. Ziplocal, LP</u>, No. 8:12-cv-755-T-26TBM, 2012 WL 2952452, at *5 (M.D. Fla. July 19, 2012) ("The situs of the injury in copyright infringement [cases] for purposes of personal jurisdiction has generally been held to be the state where the copyright owner resides. . . . Because [plaintiff] is the copyright owner, and [plaintiff's] principal place of business is in Riverview, Florida, the situs of the injury for purposes of section 48.193(1)(b) is Florida."); <u>Carmel</u>, 2013 WL 1177857, at *4 ("There is alleged trademark infringement outside of

Florida of a trademark owned by a Florida resident, on a website accessible in Florida.  This is sufficient to establish specific jurisdiction under § 48.193(1)(b) over [defendant] due to its committing a tortious act in Florida.").

In this case, Boogie Media does not directly dispute the applicability of section 48.193(1)(b).  Boogie Media offers the affidavit of Allen Smith, Vice President of Boogie Media, in an attempt to challenge personal jurisdiction.  (Doc. # 11-1).  Smith's affidavit avers that "Boogie Media has no physical presence of any kind in Florida, does not have any offices or employees in Florida, and has no regular and established place of business in the state of Florida."  (Id. at 2).  Additionally, Smith claims that Boogie Media's websites are "capable of being seen anywhere in the world over the World Wide Web," and that "Boogie Media does not direct its websites at Florida or any other state."  (Id.).

However, as explained by the court in R&R Games, Inc. v. Fundex Games, 2013 WL 784397 at *3, a defendant's "lack of business activity targeting Florida residents does not contradict allegations that it infringed [the plaintiff's] trademark while conducting other business activity, which

13

resulted in harm to [the plaintiff] in Florida." Accordingly, Boogie Media has failed to rebut the allegation that the websites infringed Roca Labs' marks and resulted in injury incurred by Roca Labs in Florida, and thus has failed to provide evidentiary support for its jurisdictional challenge.

Accordingly, because Boogie Media's alleged trademark infringement caused harm to Roca Labs in Florida, the Court finds that specific jurisdiction under section 48.193(1)(b) has been established.[1]

### B.   Due Process

After establishing that the state's long-arm statute permits jurisdiction, a plaintiff must also demonstrate that exercising jurisdiction over the defendant would comport with the requirements of due process.  Due process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and

---

[1] Plaintiff also alleges that Boogie Media is subject to general jurisdiction under Florida's long-arm statute. However, because the Court has determined that Boogie Media is subject to specific jurisdiction under section 48.193(1)(b), "it is not necessary to determine whether [Boogie Media] is also subject to general jurisdiction under the statute." Carmel, 2013 WL 1177857, at *4 n.2.

substantial justice.'"  Int'l Shoe v. Washington, 326 U.S.
310, 316 (1940).

### 1.  **Minimum Contacts**

Jurisdiction may be found where a defendant's "conduct
and connection with the forum state are such that he should
reasonably anticipate being haled into court there."
World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 297
(1980).  A defendant is considered to have "fair warning
that a particular activity may subject [it] to the
jurisdiction of a foreign sovereign" if the defendant has
"purposefully directed his activities at residents of the
forum . . . and the litigation results from alleged
injuries that arise out of or relate to those activities."
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985)
(internal quotations and citations omitted).  "So long as
it creates a substantial connection with the forum, even a
single act can support jurisdiction." Id. at 476.

"Intentional torts are such acts, and may support the
exercise of personal jurisdiction over the nonresident
defendant who has no other contacts with the forum."
Licciardello, 544 F.3d at 1285 (citing Calder v. Jones, 465
U.S. 783, 790 (1984)).  The Eleventh Circuit applies the
"effects" test for purposes of determining specific

jurisdiction in intentional tort cases.  <u>Oldfield v. Pueblo De Bahia Lora, S.A.</u>, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009).  The effects test requires that a defendant must have "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated."  <u>Id.</u>  "[W]here a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum."  <u>New Lenox Indus., Inc. v. Fenton</u>, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007).

In this case, Boogie Media is alleged to have committed an intentional tort against Roca Labs by using Roca Labs' registered marks on various websites.  Boogie Media's intent in creating the allegedly infringing websites was to direct customers to a competing product, Bystrictin, and to profit therefrom.  According to the allegations set forth in the Amended Complaint, Boogie Media received a letter from Roca Labs warning it of the perceived trademark infringement, yet Boogie Media persisted in infringing Roca Labs' registered marks. Thus, Boogie Media's alleged infringement satisfies the

effects test for personal jurisdiction -- "the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum." Licciardello, 544 F.3d at 1288. "[B]ecause [defendant's] intentional conduct in [its] state of residence was calculated to cause injury to [plaintiff] in Florida . . . [defendant] cannot now claim surprise at being haled into court here." Id. (internal citations omitted).

## 2. **Fair Play and Substantial Justice**

Having established that Boogie Media's contact with Florida is constitutionally sufficient, it is necessary to decide whether exercising personal jurisdiction over Boogie Media comports with traditional notions of fair play and substantial justice. While courts rely on a number of factors when conducting an analysis of traditional notions of fair play and substantial justice, there are three factors of particular importance: (1) the burden on the defendant in defending the lawsuit, (2) the forum state's interest in adjudicating the dispute, and (3) the plaintiff's interest in obtaining convenient and effective relief. Madara v. Hall, 916 F.2d 1510, 1517 (11th Cir. 1990).

With regard to the inconvenience to Boogie Media of litigating this trademark dispute in Florida, the Court notes that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 114 (1987).  Although the burden on Boogie Media in having to defend a suit in Florida may be great, this burden is outweighed by Roca Labs' strong interest in obtaining convenient and effective relief from the alleged trademark infringement.  As aptly stated by the Eleventh Circuit in Licciardello, "[i]n this case, the Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy."  544 F.3d at 1288. "Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." Id.  The Court thus determines that exercising jurisdiction over Boogie Media comports with fair play and substantial justice.

18

III. **Failure to State a Claim**

In addition to challenging personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), Boogie Media's Motion to Dismiss challenges the sufficiency of each Count in Roca Labs' Amended Complaint under Rule 12(b)(6).

In reviewing a motion to dismiss for failure to state a claim, a trial court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted).

19

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## A.   Trademark Infringement

In accordance with the Lanham Act, liability for trademark infringement occurs when a person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).[2]

---

[2] The Court notes that Roca Labs erroneously cites to 15 U.S.C. § 1117 as the statute supporting its claim for trademark infringement. (Doc. # 5 at 9). However, section 1117 enumerates remedies available to plaintiffs who prevail under other sections of the Lanham Act; section 1117 alone does not provide a cause of action. Because Boogie Media does not challenge Roca Labs' erroneous use of this section, and because Roca Labs states elsewhere in the Amended Complaint that it seeks relief for trademark

The parties do not dispute that Roca Labs' marks have priority; rather, Boogie Media argues that "the term 'gastric bypass' is in common use, and therefore cannot have strong [trademark] protection, [and] the same is true for the word 'natural.'"  (Doc. # 11 at 15).  Furthermore, Boogie Media contends that it has not "attempted to trademark the names of [its] websites, and the names of the websites are different and different-sounding from Plaintiff's marks."  Id.

Boogie Media's arguments are inconsequential at this juncture.  "A certificate of registration acts as prima facie evidence of the mark's validity and of the registrant's exclusive right to use the trademark mark." Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) (citing 15 U.S.C. §§ 1057, 1115(a)).  "Registration of the mark, therefore, provides the plaintiff with a presumption that the mark is not merely descriptive or generic, or, if merely descriptive, is accorded secondary meaning.  This presumption may, of course, be overcome by proof of descriptiveness, or by proof of genericness."  Id. (internal quotation and citation omitted).

---

infringement under section 1114 (Id. at 2, 10), the Court construes Count I as a claim under 15 U.S.C. § 1114(1).

Roca Labs has sufficiently stated a claim for trademark infringement (1) because it has produced the certificates of registration for the relevant marks, and (2) because Roca Labs' allegations, taken as true, demonstrate that it is plausible that Boogie Media's use of a colorable imitation of the registered marks creates a likelihood of consumer confusion, as the marks allegedly are being employed to "direct commerce to competing products to the exclusion of Plaintiff's products." (Doc. # 5 at 9). These allegations state a plausible claim for relief and are sufficient to put Boogie Media on notice of what Roca Labs' claim is and the grounds on which it rests. Accordingly, the Court finds that Roca Labs has alleged sufficient facts to state a claim for trademark infringement.

### B.   <u>Cybersquatting</u>

"The Cyberpiracy prevention section of the Lanham Act, 15 U.S.C. § 1125(d), makes a person liable for the 'bad faith intent to profit' from a protected mark by using a domain name that is identical or confusingly similar." <u>PetMed Express, Inc. v. MedPets.com, Inc.</u>, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004). "Liability for federal cyberpiracy occurs when a plaintiff proves that (1) its

mark is a distinctive or famous mark entitled to protection, (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks, and (3) the defendant registered the domain names with the bad faith intent to profit from them." Id.

Boogie Media argues that Roca Labs has not sufficiently alleged that its mark is "a distinctive or famous mark entitled to protection," and therefore that Roca Labs has failed to state a claim for cybersquatting. However, Roca Labs has alleged that its marks "have become, through widespread and favorable public acceptance and recognition, an asset of substantial value as symbols of Roca [Labs], its quality goods, services and its goodwill." (Doc. # 5 at 6). Additionally, as explained above, the Court finds that Roca Labs has alleged sufficient facts regarding the confusing similarity between its marks and Boogie Media's website domain name to survive a motion to dismiss. Furthermore, Roca Labs has alleged that Boogie Media "used the infringing domain name to divert consumers from Plaintiff's websites to [other] websites and competing products accessible under the infringing domain name for Defendants' commercial gain." (Id. at 11). Viewing the facts in the light most favorable to Roca Labs, the Court

finds these allegations sufficient to state a claim under 15 U.S.C. § 1125(d).

**C.**   **Florida Deceptive and Unfair Trade Practices Act**

"A claim for damages under section 501.204(1) [(FDUTPA)] has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Wright v. Emory, 41 So. 3d 290, 292 (Fla. 4th DCA 2010) (internal quotations and citation omitted). "Although [section 501.204(1)] does not define 'unfair and deceptive act or practice,' the provisions of the act are to be 'construed liberally.'" Intercoastal Realty, Inc. v. Tracy, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010) (quoting § 501.202). "A practice is unfair under the FDUTPA if it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Id. (internal quotations and citation omitted).

Boogie Media argues that, "[g]iven the fact that Plaintiff cannot state a cause of action for Trademark Infringement or Cybersquatting, Plaintiff can clearly not support its[ ] claims for violations of [FDUTPA] and Unfair Competition." (Doc. # 11 at 16). Again, the Court disagrees. Roca Labs has alleged that Boogie Media

infringed Roca Labs' registered marks in order to redirect internet traffic from Roca Labs' websites to Boogie Media's websites for commercial gain.  The Court finds these facts sufficient to state a claim under FDUTPA.

### D. **Unfair Competition**

"To state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion."  Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007).  "The Florida common law of unfair competition is an umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."  Id. at 1325 (internal quotation and citation omitted).  Boogie Media does not dispute that it competes with Roca Labs for a common pool of online customers "in the business of selling weight loss products."  (Doc. # 20 at 2). Additionally, Roca Labs has sufficiently alleged facts to support its claim of infringement, including a plausible likelihood of consumer confusion.  Thus, Roca Labs has alleged facts sufficient to state a claim for unfair competition.

IV.   **Conclusion**

Boogie Media is subject to personal jurisdiction in Florida under section 48.193(1)(b) due to the commission of a tortious act within this state. Although Boogie Media argues that litigating this trademark dispute in Florida would be inconvenient, the Court finds that exercising jurisdiction over Boogie Media does not offend the Constitutional requirement of due process. Additionally, the Court finds that Roca Labs has adequately stated a claim as to each of the four causes of action asserted in the Amended Complaint.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion to Dismiss Complaint (Doc. # 11) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 14th day of May, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record